**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHEL MANASSA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLENE EATON and<br>CHOPPED N CHEESY LLC,<br><br>Defendants. | Case No. 5:26-cv-2111 (BKS/ML) |

# COMPLAINT

Plaintiff Michel Manassa files this Complaint against Defendants Charlene Eaton and Chopped N Cheesy LLC ("CNC") and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from Defendants' failure to make payments required under a June 18, 2025 Settlement Agreement.

2. Manassa seeks judgment for $144,270 in unpaid principal, $500 in late fees, default interest at a 15% annual percentage yield, attorneys' fees, and costs.

## PARTIES

3. Plaintiff is a natural person who is a citizen of Florida and who resides in Miami-Dade County, Florida.

4. Defendant Eaton is a natural person who is a citizen of New York and who resides in Madison County, New York.

5. Defendant CNC is a New York limited liability company whose sole member is Eaton. Because Eaton is a citizen of New York, CNC is also a citizen of New York.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Plaintiff is a citizen of Florida.

8. Defendants are citizens of New York.

9. This Court has personal jurisdiction over Eaton, who resides in New York, and CNC, a New York limited liability company.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendants reside in this District.

## FACTUAL ALLEGATIONS

11. In 2023 and 2024, Manassa loaned Eaton $129,970 to provide working capital for CNC's business and paid Eaton $19,800 for professional services she agreed to perform.

12. Eaton failed to repay the loan proceeds and failed to perform the agreed services.

13. On April 21, 2025, Manassa filed a civil action captioned *Manassa v. Eaton,* Case No. 5:25-cv-00490-BKS-ML, in this District (the "Prior Action").

14. On June 18, 2025, Manassa, Eaton, and CNC executed a written Settlement Agreement, a true and correct copy of which is attached as Exhibit A. That same day, Manassa and Eaton filed a stipulation of dismissal of the Prior Action.

15. In Paragraph 4 of the Settlement Agreement, Eaton and CNC agreed, jointly and severally, to pay Plaintiff $149,770 (the "Settlement Amount"), plus interest, in monthly installments from July 2025 through June 2035.

16. Under the applicable payment schedule, Eaton and CNC jointly and severally owed monthly installments of $1,000 from July through October 2025, $250 from November 2025 through April 2026, $1,000 in May and June 2026, and $1,250 from July through October 2026.

17. Paragraph 5 of the Settlement Agreement requires payment on the first day of each month. Eaton and CNC could collectively cure up to three late payments by paying on or before the tenth day of the month. Paragraph 5 provides for a $500 late fee for a permitted late payment not cured by the tenth day and states, "If Charlene and CNC fail to make four or more payments by the first of any month, they shall be deemed in default of this Agreement."

18. Under Paragraphs 6 and 9 of the Settlement Agreement, CNC unconditionally and irrevocably guaranteed full and timely payment of all amounts Eaton owes, including the Settlement Amount and accrued and default interest. CNC agreed that its guaranty is "a continuing, absolute, and unconditional guaranty of payment and not merely of collection," waived any requirement that Manassa first proceed against Eaton or exhaust other remedies, waived "all defenses available to a guarantor at law or in equity," and agreed to be jointly and severally liable with Eaton.

19. Under Paragraph 10 of the Settlement Agreement, upon default, Manassa is entitled to recover the total outstanding Settlement Amount from Eaton and CNC jointly and severally, together with interest accruing at an annual percentage yield of 15% from the date of default. Eaton and CNC also stipulated and consented "to the prompt, summary entry of judgment for the full outstanding Settlement Amount, plus accrued or default interest," and waived "all defenses except the defense that payment was, in fact, timely made pursuant to Paragraph 4."

20. Under Paragraph 23 of the Settlement Agreement, the prevailing party in an action to enforce the Agreement is entitled to recover reasonable attorneys' fees, costs, and expenses, including those incurred on appeal and in post-judgment proceedings.

21. Under Paragraph 21 of the Settlement Agreement, Florida law governs the parties' contractual rights and obligations.

22. Eaton and CNC failed to pay the first $1,000 installment when due on July 1, 2025, and did not pay by July 10, 2025. Manassa's counsel demanded payment in writing throughout July. Eaton and CNC eventually paid on July 29, 2025, after the contractual cure period had expired. Under Paragraph 5 of the Settlement Agreement, Eaton and CNC owe a $500 late fee for July 2025.

23. Eaton and CNC also paid the installments due November 1, 2025, December 1, 2025, and January 1, 2026 late, making those payments on November 4, 2025, December 5, 2025, and January 7, 2026, respectively. Each payment arrived after the first day of the month.

24. Eaton and CNC failed to pay the $250 installment due February 1, 2026, and did not pay by February 10. On February 23, 2026, Manassa's counsel emailed a default notice to Eaton and CNC at letseat@choppedncheesy.com, the email address designated for notices under Paragraph 10 of the Settlement Agreement. Eaton and CNC paid that installment on February 24, 2026, 23 days late and only after receiving the default notice.

25. Eaton and CNC never paid the $1,000 installment due May 1, 2026. Manassa's counsel emailed default notices to Eaton and CNC at letseat@choppedncheesy.com on May 18, 2026 and June 1, 2026.

26. Eaton and CNC never paid the $1,000 installment due June 1, 2026. On June 2, 2026, Eaton wrote to Manassa's counsel that she intended to sell the business. Manassa's counsel

replied the same day to letseat@choppedncheesy.com with another default notice and explained that a sale of the business would have no effect on the payment obligations, which Eaton and CNC owe jointly and severally.

27. Eaton and CNC never paid the $1,250 installment due July 1, 2026. On July 10, 2026, Manassa's counsel emailed a third consecutive default notice to Eaton and CNC at letseat@choppedncheesy.com and asked Eaton to explain the missed payments.

28. Eaton and CNC never paid the $1,250 installments due August 1, September 1, and October 1, 2026. Eaton and CNC have made no payments since April 1, 2026.

29. Eaton and CNC made only ten payments, totaling $5,500, under the Settlement Agreement. Manassa received those payments in the trust account of his counsel pursuant to Paragraph 7 of the Settlement Agreement:

| **Installment** | **Amount** | **Date Received** |
|---|---|---|
| July 2025 (due July 1, 2025) | $1,000 | July 29, 2025 |
| August 2025 (due August 1, 2025) | $1,000 | August 1, 2025 |
| September 2025 (due September 1, 2025) | $1,000 | August 20, 2025 |
| October 2025 (due October 1, 2025) | $1,000 | September 22, 2025 |
| November 2025 (due November 1, 2025) | $250 | November 4, 2025 |
| December 2025 (due December 1, 2025) | $250 | December 5, 2025 |
| January 2026 (due January 1, 2026) | $250 | January 7, 2026 |
| February 2026 (due February 1, 2026) | $250 | February 24, 2026 |
| March 2026 (due March 1, 2026) | $250 | February 24, 2026 |
| April 2026 (due April 1, 2026) | $250 | April 1, 2026 |

30. Eaton and CNC failed to make at least four payments by the first day of their respective months, including the installments due July 1, 2025, November 1, 2025, December 1, 2025, and January 1, 2026. They subsequently failed to make the February 1, 2026 payment when

due and have never paid the installments due from May through October 2026. Eaton and CNC were in default under Paragraph 5 of the Settlement Agreement no later than June 1, 2026.

31. Eaton and CNC have not cured their defaults or paid the outstanding installments and late fees. All conditions precedent to this action have occurred or have been performed, waived, or excused. Fed. R. Civ. P. 9(c).

32. Under Paragraph 10 of the Settlement Agreement, Eaton and CNC now owe Manassa, jointly and severally, the accelerated unpaid principal balance of $144,270, together with $500 in late fees and default interest accruing at a 15% annual percentage yield from June 1, 2026.

**COUNT ONE**

**Breach of Settlement Agreement (Against Eaton and CNC)**

33. Plaintiff realleges and incorporates by reference paragraphs 1 through 32.

34. The Settlement Agreement is a valid and enforceable written contract among Manassa, Eaton, and CNC. The parties exchanged consideration, including mutual releases and dismissal of the Prior Action.

35. Manassa performed his obligations under the Settlement Agreement, including releasing his claims against Eaton and CNC and dismissing the Prior Action.

36. Eaton and CNC materially breached the Settlement Agreement by failing to pay the installments due May 1, June 1, July 1, August 1, September 1, and October 1, 2026, and the $500 late fee due for July 2025. Eaton and CNC also failed to make four or more payments by the first of the month, which placed them in default under Paragraph 5 and entitles Manassa to the remedies in Paragraph 10. CNC also failed to honor its unconditional guaranty of Eaton's payment obligations under Paragraphs 6 and 9 after Manassa's counsel sent written notices of default to CNC at letseat@choppedncheesy.com on February 23, May 18, June 1, June 2, and July 10, 2026.

37. Under Paragraphs 5 and 10 of the Settlement Agreement, those breaches constitute a default entitling Manassa to recover the accelerated unpaid principal balance of $144,270, together with $500 in late fees and default interest at a 15% annual percentage yield from June 1, 2026. Eaton and CNC are jointly and severally liable for these amounts.

38. Under Paragraph 10 of the Settlement Agreement, Eaton and CNC stipulated and consented "to the prompt, summary entry of judgment for the full outstanding Settlement Amount, plus accrued or default interest," and waived "all defenses except the defense that payment was, in fact, timely made pursuant to Paragraph 4." Eaton and CNC failed to make the payments identified above when due.

39. Under Paragraph 23 of the Settlement Agreement, Manassa is entitled to recover his reasonable attorneys' fees, costs, and expenses as the prevailing party, including those incurred on appeal and in post-judgment proceedings.

## **PRAYER FOR RELIEF**

WHEREFORE, Manassa respectfully requests entry of judgment in his favor and against Defendants Charlene Eaton and Chopped N Cheesy LLC, jointly and severally, as follows:

A. The unpaid principal balance of $144,270.

B. Late fees of $500.

C. Default interest at an annual percentage yield of 15% on the unpaid principal balance of $144,270 from June 1, 2026, through entry of judgment, pursuant to Paragraph 10 of the Settlement Agreement.

D. Postjudgment interest pursuant to 28 U.S.C. § 1961.

E. Reasonable attorneys' fees, costs, and expenses pursuant to Paragraph 23 of the Settlement Agreement.

F. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By: */s/ Kenneth E. Chase*
Kenneth E. Chase
N.D.N.Y. Bar No. 707936
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Tel: (305) 402-9800
Email: kchase@chaselaw.com

*Attorneys for Plaintiff Michel Manassa*

# EXHIBIT A

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between Michel Manassa, Charlene Eaton, and Chopped N Cheesy LLC ("CNC") (collectively, the "Parties").

**WHEREAS,** Michel lent $129,970 to Charlene to provide working capital for CNC's business operations with the understanding that he would be repaid in full;

**WHEREAS,** Michel paid $19,800 to Charlene for services she agreed to provide in a separate lawsuit in the State of Florida;

**WHEREAS**, a dispute arose regarding obligations owed;

**WHEREAS**, on April 21, 2025, Michel filed a lawsuit in the United States District Court for the Northern District of New York captioned *Michel Manassa v. Charlene Eaton*, Civil Action No. 5:25-cv-00490 (the "Litigation");

**WHEREAS**, on May 19, 2025, Charlene filed a Counterclaim against Michel in the Litigation;

**WHEREAS,** to avoid the expenditure of time, money, and effort, the Parties deem it to be in their respective best interests to settle and compromise their disputes through this Agreement;

**NOW THEREFORE,** in consideration of the mutual covenants contained herein, the Parties agree as follows:

1. Acknowledgement of Recitals: The Parties acknowledge that the foregoing Recitals are incorporated herein by reference.

2. Matters Being Settled:

   A. All claims asserted, or that could be asserted, by any Party, against any other Party, in the Litigation.

   B. All other claims that could be asserted by any Party against another Party, pursuant to a general release.

3. Mutual Releases:

   A. Upon execution of this Agreement, Charlene, for herself, and on behalf of her heirs, executors, administrators, agents, representatives, attorneys, relatives related consanguineously or by law, guardians, conservators, personal representatives,

trustees, beneficiaries, predecessors, successors, and assigns, does hereby IRREVOCABLY AND UNCONDITIONALLY RELEASE, ACQUIT, AND DISCHARGE Michel, and his heirs, executors, administrators, agents, representatives, attorneys, relatives related consanguineously or by law, guardians, conservators, personal representatives, trustees, beneficiaries, predecessors, successors, and assigns, from any and all claims, debts, damages, demands, liabilities, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, remedies, attorneys' fees and expenses, other than the enforcement of the rights and obligations arising under this Agreement.

B. Upon execution of this Agreement, CNC, for itself, and on behalf of its current, former, and future officers, directors, managers, members, shareholders, partners, employees, agents, representatives, attorneys, predecessors, successors, assigns, affiliates, subsidiaries, parent companies, divisions, joint ventures, insurers, reinsurers, indemnitors, guarantors, trustees, beneficiaries, fiduciaries, administrators, contractors, consultants, servants, licensees, franchisors, franchisees, and any and all related corporations, firms, associations, organizations, partnerships, and other business entities, as well as any other persons or entities acting by, through, under, or in concert with any of the foregoing, does hereby IRREVOCABLY AND UNCONDITIONALLY RELEASE, ACQUIT, AND DISCHARGE Michel, and his heirs, executors, administrators, agents, representatives, attorneys, relatives related consanguineously or by law, guardians, conservators, personal representatives, trustees, beneficiaries, predecessors, successors, and assigns, from any and all claims, debts, damages, demands, liabilities, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, remedies, attorneys' fees and expenses, other than the enforcement of the rights and obligations arising under this Agreement.

C. Upon execution of this Agreement, Michel, for himself, and on behalf of his heirs, executors, administrators, agents, representatives, attorneys, relatives related consanguineously or by law, guardians, conservators, personal representatives, trustees, beneficiaries, predecessors, successors, and assigns, does hereby IRREVOCABLY AND UNCONDITIONALLY RELEASE, ACQUIT, AND DISCHARGE Charlene and CNC, and their heirs, executors, administrators, agents,

representatives, attorneys, relatives related consanguineously or by law, guardians, conservators, personal representatives, trustees, beneficiaries, predecessors, successors, assigns, current, former, and future officers, directors, managers, members, shareholders, partners, employees, agents, representatives, attorneys, predecessors, successors, assigns, affiliates, subsidiaries, parent companies, divisions, joint ventures, insurers, reinsurers, indemnitors, guarantors, trustees, beneficiaries, fiduciaries, administrators, contractors, consultants, servants, licensees, franchisors, franchisees, and any and all related corporations, firms, associations, organizations, partnerships, and other business entities, as well as any other persons or entities acting by, through, under, or in concert with any of the foregoing, from any and all claims, debts, damages, demands, liabilities, complaints, grievances, obligations, promises, agreements, rights, controversies, costs, losses, remedies, attorneys' fees and expenses, other than the enforcement of the rights and obligations arising under this Agreement.

4. Monthly Payments to Michel: Charlene and CNC are jointly and severally liable for and shall pay Michel $149,770 ("Settlement Amount"), plus interest, pursuant to the following monthly payment schedule:

A. Year 1: From July 2025 through June 2026, Charlene and CNC shall pay Michel a total of $7,500.00 in principal-only, monthly installments in the following manner:

a. From July 2025 through October 2025: $1,000.00 per month

b. From November 2025 through April 2026: $250.00 per month

c. From May 2026 through June 2026: $1,000.00 per month

B. Year 2: From July 2026 through June 2027, Charlene and CNC shall pay Michel a total of $9,300.00 in principal-only, monthly installments in the following manner:

a. From July 2026 through October 2026: $1,250.00 per month

b. From November 2026 through April 2027: $300.00 per month

c. From May 2027 through June 2027: $1,250.00 per month

C. Year 3: From July 2027 through June 2028, Charlene and CNC shall pay Michel a total of $11,100.00 in principal-only, monthly installments in the following manner:

a. From July 2027 through October 2027: $1,500.00 per month

b. From November 2027 through April 2028: $350.00 per month

c. From May 2028 through June 2028: $1,500.00 per month

D. Year 4: From July 2028 through June 2029, Charlene and CNC shall pay Michel a total of $12,900.00 in principal-only, monthly installments in the following manner:

a. From July 2028 through October 2028: $1,750.00 per month

b. From November 2028 through April 2029: $400.00 per month

c. From May 2029 through June 2029: $1,750.00 per month

E. From Year 5 through Year 10: July 2029 through June 2035, Charlene and CNC shall pay the remaining principal balance of $108,970.00, which shall accrue interest at an annual percentage yield (APY) of 15 percent. Interest shall begin to accrue on July 1, 2029, unless otherwise set forth herein.

5. Payment Terms: All payments owed by Charlene and CNC to Michel under Paragraph 4 shall be due on the first day of each month. Each monthly payment shall first be applied to any accrued but unpaid interest, with the remainder applied to reduce the outstanding principal balance. Charlene and CNC may cure up to three late payments by making payment on or before the tenth day of the respective month. The three permitted late payments are collective and not per party. Charlene and CNC together may cure a maximum of three, not six, late payments total. If Charlene and CNC fail to make four or more payments by the first of any month, they shall be deemed in default of this Agreement. For any of the three permitted late payments not cured by the tenth day of the month, Charlene and CNC shall pay Michel an additional late fee of $500.00 for that month.

6. Guaranty: CNC unconditionally and irrevocably guarantees the full and timely payment of all amounts owed by Charlene under this Agreement, including

the Settlement Amount and any accrued interest, including default interest. This guaranty is a continuing, absolute, and unconditional guaranty of payment and not merely of collection, and CNC expressly waives any requirement that Michel first proceed against Charlene or exhaust any remedies before proceeding against CNC. CNC further waives all defenses available to a guarantor at law or in equity, and agrees to be jointly and severally liable with Charlene for all obligations under this Agreement.

7. Payment Instructions: All payments made in accordance with these terms shall be sent to the trust account of Michel's counsel, Chase Law & Associates, P.A., at the following bank address:

| | |
|---|---|
| Routing Number (for wires): | [redacted] |
| Account Number: | |
| Routing Number (for ACH): | |
| Account Name: | Chase Law & Associates, P.A. |
| Bank Name: | Bank of America |
| Account Address | 951 Yamato Road, Suite 280<br>Boca Raton, FL 33431 |

8. Prepayment: Charlene and CNC may prepay all or any portion of the Settlement Amount at any time without penalty. Any such prepayment shall be applied first to accrued interest, then to principal.

9. Guaranty: CNC unconditionally and irrevocably guarantees the full and timely payment of all amounts owed by Charlene under this Agreement, including the Settlement Amount and any accrued interest, including default interest. This guaranty is a continuing, absolute, and unconditional guaranty of payment and not merely of collection, and CNC expressly waives any requirement that Michel first proceed against Charlene or exhaust any remedies before proceeding against CNC. CNC further waives all defenses available to a guarantor at law or in equity, and agrees to be jointly and severally liable with Charlene for all obligations under this Agreement.

10. Default: In the event of a default, Charlene and CNC consent to Michel filing an action in the state or federal courts in the State of Florida to enforce the terms of this Agreement. In any such action, Michel shall be entitled to recover the total outstanding balance of the Settlement Amount, together with interest accruing at an annual percentage yield of 15 percent from the date of default, from Charlene and CNC, jointly and severally. Charlene and CNC expressly waive formal service of process and stipulate and consent to service of process and all notices in connection with any such action by email to letseat@choppedncheesy.com. In any action brought by Michel against Charlene or CNC to enforce this Agreement, Charlene and CNC expressly stipulate and consent to the prompt, summary entry of judgment for the full outstanding Settlement Amount, plus accrued or default interest, and waive all

defenses except the defense that payment was, in fact, timely made pursuant to Paragraph 4.

11. Confidentiality: Charlene and CNC agree that all information concerning Michel's relationship or dispute with his aunt, Adelaida C. Bailey, is strictly confidential. Charlene and CNC shall not disclose, publish, communicate, or otherwise reveal such information, whether directly or indirectly, publicly or privately, in any manner or to any person or entity. Any breach of this provision shall entitle Michel to liquidated damages in the amount of $10,000 per violation. The Parties acknowledge and agree that the harm caused by any such breach would be difficult to quantify and that this liquidated damages amount represents a reasonable estimate of the damages Michel would sustain and is not intended as a penalty. This remedy shall be in addition to any other relief to which Michel may be entitled at law or in equity.

12. Post-Death Payments: Charlene and CNC agree that, upon Michel's death, all remaining payments owed under this Agreement shall be made to Michel's brother, Sharbel Manassa, in accordance with the same terms, payment schedule, and payment instructions set forth herein.

13. Dismissal of Claims: Upon execution of this Agreement, the parties shall promptly file a joint stipulation of dismissal with prejudice as to all claims that have been or could have been asserted between them, with each party to bear its own attorneys' fees and costs unless otherwise provided herein.

14. Statement of Understanding: By executing this Agreement, the Parties acknowledge that they have been advised to consult with legal counsel regarding the terms and legal effect of this Agreement, have either done so or had a full and fair opportunity to do so, and that they have read, understand, and voluntarily enter into this Agreement without coercion, duress, or undue influence. Any party executing this Agreement without legal representation does so voluntarily and acknowledges that they are proceeding pro se and are solely responsible for understanding the legal consequences of this Agreement. The Parties further agree that this Agreement is the product of joint negotiation and drafting and therefore shall not be construed against any party as the drafter.

15. Non-Waiver: A waiver of any breach of this Agreement shall not be construed as a waiver of any other breach or subsequent breach of the same provision.

16. Severability: If any provision of this Agreement is held invalid or unenforceable, such provision shall be severed, and the remainder of the Agreement shall remain in full force and effect.

17. Entire Agreement: This Agreement constitutes the entire understanding of the Parties and supersedes all prior agreements related to its subject matter. It may not be amended without written consent of the Parties.

18. Authority: Each Party represents and warrants that it has the authority to execute and deliver this Agreement and that it has not transferred or assigned any claims covered by this Agreement.

19. Good Faith Compliance: The Parties agree to make good faith efforts to carry out and effectuate the terms and intent of this Agreement. Each party shall take all reasonable steps necessary to fulfill their respective obligations and to avoid any action that would frustrate or undermine the purpose of this Agreement.

20. Counterparts: This Agreement may be executed in counterparts or electronically, each of which shall be deemed an original but together shall constitute one instrument.

21. Applicable Law and Forum: This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regard to its conflict of law principles. Pursuant to Florida Statutes §§ 685.101 and 685.102, the Parties agree that any action or proceeding arising out of or relating to this Agreement shall be brought exclusively in the state or federal courts located in Miami-Dade County, Florida, and each party irrevocably submits to the jurisdiction of such courts and waives any objection based on forum non conveniens, improper venue, or lack of personal jurisdiction. The Parties acknowledge that this Agreement involves an obligation to pay Michel, a resident of Miami-Dade County, Florida, and constitutes a sufficient commercial relationship justifying application of §§ 685.101 and 685.102.

22. Usury Savings Clause: Notwithstanding any provision of this Agreement to the contrary, it is the intent of the Parties that no portion of the payments, charges, fees, or interest provided for under this Agreement shall be deemed to constitute interest in excess of the maximum rate permitted by applicable law. If any amount is determined by a court of competent jurisdiction to constitute interest that would exceed the maximum lawful rate, then such excess shall be automatically reduced to the extent necessary to comply with applicable law. Any amount already paid in excess of such lawful rate shall, at the option of Michel, be applied to reduce the principal balance of the Settlement Amount or refunded to Charlene and CNC.

23. Prevailing Party: In the event of any action, proceeding, or dispute arising out of or relating to the enforcement of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees, costs, and expenses incurred, including those incurred on appeal and in any post-judgment proceedings.

24. Successors and Assigns: This Agreement shall bind and benefit the Parties and their respective successors, assigns, and representatives.

25. Headings and Construction: Headings are for reference only and shall not affect the meaning of this Agreement. Terms in the singular include the plural and vice versa where context requires.

26. Effective Date: This Agreement is effective upon execution by all Parties.

**[SIGNATURE PAGE IMMEDIATELY FOLLOWING]**

# SETTLEMENT AGREEMENT
# SIGNATURE PAGE

**CHOPPED N CHEESY LLC, a New York limited liability company**

Signed Name: Signed by: Charlene Eaton 5E70BD1CCCC84E1...

Printed Name: Charlene Eaton

Title: Owner and Authorized Representative

Date: 6/18/2025

**CHARLENE EATON**

Signed Name: Signed by: Charlene Eaton 5E70BD1CCCC84E1...

Date: 6/18/2025

**MICHEL MANASSA**

Signed Name: Signed by: Michel Manassa BB1C4C4FC5DA495...

Date: 6/18/2025